IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JERRY W. HAMILTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 11-0007-KD-N ) |
| COLDWELL BANKER MORTGAGE, *et al.*, | ) ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter is before the court on the plaintiff's Motion to Remand (doc. 7), and the parties' briefs on that issue (docs. 8, 12, 15). The sole issue is whether the claims satisfy the jurisdictional amount in controversy requirement for federal jurisdiction under diversity of citizenship. The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a). As it appears that this court lacks jurisdiction, the undersigned RECOMMENDS that the motion be granted and that this action be REMANDED to the Circuit Court of Mobile County, Alabama.

## Background[1]

Plaintiff filed his complaint on November 30, 2010 in the Circuit Court of Mobile County, Alabama. Plaintiff alleges therein that he entered into a residential mortgage with defendant Coldwell Banker Mortgage on October 28, 2005, in the face amount of $98,000, that he thereafter fell behind in his payments, that he and Coldwell Banker agreed to a payment plan, and that plaintiff complied with that payment plan. However, in October 2010, Coldwell began

---

[1] The factual background is drawn from the briefs of the parties. The recitation of plaintiff's allegations are drawn from the Complaint (exhibit to doc. 1).

rejecting plaintiff's reduced payments made in compliance with the payment plan, and forwarded the plaintiff's file to its attorneys preparatory to foreclosure. Coldwell mentioned the possibility of a homeowners assistance program; plaintiff had already begun the application process for such a program. On October 20, 2010, defendant PHH Mortgage Corporation (acting as servicer for the loan) requested additional information with regard to plaintiff's mortgage modification request; plaintiff states that he had previously provided some or all of the requested information, but resubmitted it on November 1, 2010.

Defendant Coldwell's foreclosure counsel sent a letter dated October 28, 2010, to plaintiff, notifying him that he was in default, that the debt was being accelerated by PHH, and that he would have to pay $102, 462.78 to avoid foreclosure. The letter stated that PHH had obtained the servicing rights to the loan, and that a foreclosure sale was scheduled for December 3, 2010.[2]

Plaintiff states that defendants continued to consider his modification application, governed by the Homeowner Afffordability and Modification Program ("HAMP" Act), and that the HAMP Act and PHH's own policies precluded foreclosure proceedings while such an application was pending. However, despite communications with PHH concerning his HAMP application, the foreclosure sale was not postponed until after suit was filed. Shortly thereafter, but prior to removal to this court, defendants cancelled the foreclosure sale.

The complaint contains seven enumerated counts:

---

[2] Plaintiff's complaint alleges that PHH provided copies of published notices of foreclosure which stated that PHH had acquired ownership of the mortgage by assignment but did not reference an assignment document. Plaintiff alleged that "PHH did not own any beneficial interest in the mortgage or note at the time the notice was first published and has no standing to initiate a foreclosure proceeding." Doc. 1, Ex. 1, p. 5.

Count One alleges that defendants wrongfully foreclosed on the property. The count also alleges that PHH has no standing to conduct the foreclosure or accelerate the debt. It seeks damages proximately caused by the wrongful foreclosure.

Count Two asserts that defendants acted wantonly in connection with the management of the mortgage, the handling of the HAMP application, and the institution of foreclosure proceedings.

Count Three alleges that defendants actions in connection with management of the mortgage, the handling of the HAMP application, acceleration of the debt and the foreclosure proceedings were negligent, and that it negligently hired, trained and supervised its employees responsible for those actions.

Count Four alleges that defendants' actions related to management of the accont and institution of foreclosure proceedings breached the mortgage agreement.

Count Five [erroneously numbered VI] alleges that defendants owed and breached a duty of good faith in connections with management of plaintiff's account and the foreclosure proceedings.

Count Six [erroneously numbered VII] asserts that, based on representations made to plaintiff, defendants should be stopped from conducting the foreclosure sale on December 3, 2010.

Count Seven [erroneously numbered VIII] seeks declaratory and injunctive relief, as follows: (A) that defendant has no authority to conduct foreclosure sale on December 3, 2010; (B) that defendant is equitably stopped from conducting foreclosure sale on December 3, 2010; and (C) [erroneously labeled "D"] that PHH lacked standing to conduct the foreclosure at the time it published notice and purportedly accelerated the loan.

Defendant PHH[3] filed the Notice of Removal on January 5, 2011, alleging that this court had original jurisdiction under a diversity of citizenship theory. Plaintiff filed the instant motion to remand on February 4, 2011. (Doc. 7) Plaintiff acknowledges that the parties are diverse, but challenges defendants' showing concerning the jurisdictional requirement that the amount in controversy exceeds $75,000. The complaint makes an unspecified claim for damages. The motion has been fully briefed and is now ripe for the court's consideration.

Applicable Law

Federal courts are courts of limited jurisdiction; therefore, remand statutes are construed narrowly and jurisdictional uncertainties are resolved in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction. Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998); Adventure Outdoors, Inc. v.. Blomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (Removing defendant bears burden of proving proper federal jurisdiction). That burden is by a preponderance of the evidence." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement."), *overruled on other grounds*, Cohen v. Office Depot, Inc ., 204 F.3d 1069 (11th Cir. 2000).

---

[3] Defendant PHH states that it does business under the name Coldwell Banker Mortgage, that there is no separate entity named Coldwell Banker Mortgage, and thus that there is but a single defendant. The court accepts this clarification for purposes of the instant motion, but notes that plaintiff's arguments that PHH lacked standing to accelerate and/or foreclose the mortgage are based on his misunderstanding of this relationship. PHH's clarification thus arguably undermines one of its arguments in favor of jurisdiction. As plaintiff had not withdrawn its allegations to that effect, the court does not base its decision on that ground.

Where, as here, "the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001); Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal....") [4]

## Analysis

The defendant's Notice of Removal includes a copy of the mortgage at issue in this case, (doc. 1, Ex. 2), but otherwise offers no evidence to support the existence of jurisdiction. Instead, defendant argues that the amount in controversy is "readily deducible" from the face of the complaint and mortgage because the nature of plaintiff's claims puts the entire amount of the mortgage—or alternatively the entire amount of the accelerated debt—at issue.[5] Specifically, defendant first argues, in conclusory fashion, that this is true, and thereafter argues that plaintiff's inclusion of allegations that PHH lacked a beneficial interest in the mortgage and note at the time notice was first published puts its entitlement to receive any amount from the

---

[4] Like Pretka, this case was removed within thirty days of service of the complaint on the defendant pursuant to the first paragraph of 28 U.S.C. § 1446(b). The court thus need not apply the procedures mandated by Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir. 2007), which addressed removal under the second paragraph of § 1446(b).

[5] The original amount of the mortgage was $98,000, and the accelerated debt is $102,462.78. Citation to the original amount of the debt assumes that plaintiff made no payments reducing the principal as of the date of the removal of this action.

mortgage at issue. Defendant also argues that, because plaintiff claims that the acceleration was improper, he is effectively challenging PHH's right to claim the entire $102,462.78.

This court has previously held, in a case involving claims concerning an allegedly-wrongful foreclosure, that a close analysis of the damages sought and available under the claims made in the complaint should be undertaken to determine the amount actually in controversy. *See e.g.,* <u>Reed v. Chase Home Finance, L.L.C</u>., 2011 WL 321737 (S.D.Ala.).[6] In <u>Reed</u>, the court found that allegations very similar to those in the instant action did not place the entire amount of the mortgage, plus all fees and interest, into dispute.

Contrary to defendant's arguments, none of the plaintiff's claims seeks to absolve him from the debt. Plaintiff does not claim that, win or lose, he will not have to repay the loan amount. Rather, plaintiff challenges the defendant's right to accelerate the loan, to conduct the December 3, 2010 foreclosure sale, and its handling of his payments and HAMP application. These matters, at most, could alter the timing and terms of that repayment. It is the value of the relief sought which determines the amount in controversy.[7]

---

[6] Defendant relies on <u>Mapp v. Deutche Bank Nat. Trust Co</u>., 2009 WL 3664118 (M.D.Ala.). The court finds the <u>Reed</u> analysis to be applicable to the claims in this case; to the extent, <u>if any</u>, that <u>Mapp</u> would require a contrary conclusion under the allegations presented in the instant complaint, the court finds that the reasoning set forth in <u>Reed</u> is more persuasive.

[7] For example, if a plaintiff were challenging the accelerated amount, where the face value of the mortgage was not challenged, the amount in controversy might be determined by subtracting the amount of the underlying mortgage—which would be payable whether plaintiff won or lost—from the accelerated amount; that figure would represent the difference that prevailing in the litigation might reasonably be said to cause. *See e.g,* <u>Bourgeois v. Wells Fargo Bank, N.A</u>., 2011 WL 836677 (S.D.Ala. Feb. 16, 2011) (finding claim for loan modification worth $77,000 sufficient; citing cases that rejecting diversity jurisdiction where complaint sought temporary injunction delaying foreclosure); <u>Horace v. LaSalle Bank Nat'l Ass'n</u>, 2009 WL 426467, *1-2 (M.D.Ala. Feb. 17, 2009)(delay in foreclosure does not put full value of mortgage at issue); <u>James v. U.S. Bank N.A.</u>, 2009 WL 2170045, *1 (M.D.Ala. July 17, 2009)(monetary delay in foreclosure, without challenge to validity of mortgage, is not worth full value of mortgage from plaintiff's point of view); <u>Sanders v. Homecomings Financial, LLC</u>, 2009 WL 1151868, *1-3 (M.D.Ala. Apr. 29, 2009)(claim for misconduct in sale or mortgage and request for temporary delay of foreclosure worth "at the very most, his equity in the home."); Carstarphen <u>v. Deutsche Bank Nat'l</u>
(Continued)

As for the challenges to the foreclosure, the complaint very particularly addresses only the scheduled December 3, 2010, foreclosure sale previously noticed by the defendant. At the time the complaint was filed in the state court, that sale remained pending, threatening plaintiff's home. Defendants' argument consists of labeling plaintiff's position--that the claims were limited to what the complaint says—"ridiculous" because that would mean that the claims concerning that sale were now moot. The addition of the label does not make it so, and that is precisely the situation presented. The language, for example, of Count Seven, seeking a declaration "that Defendant has no authority … to conduct any foreclosure sale <u>on December 3, 2010</u>," and that it is "equitably stopped from conducting <u>the noticed sale</u>," cannot reasonably be read any other way.[8] These claims were valid when the complaint was filed but were moot <u>prior to the removal of this action to federal court</u>; defendant voluntarily cancelled the sale after the complaint was filed. Even if it had not, the removal did not occur for over a month after the sale had been scheduled. Clearly, any gain or loss which <u>migh</u>t have been occasioned had the state court timely stopped the foreclosure can not be attributable to the amount in controversy at the time of removal. *See* <u>Reed v. Chase Home Financial</u>, 2011 WL 321737, n.1. Not even the value

---

<u>Trust Co.</u>, 2009 WL 1537861, *4-5 (S.D. Ala. June 1, 2009)(finding jurisdictional amount not met where requested "injunctive relief is temporary, not permanent in nature;" "Because the benefit to a homeowner of a permanent injunction blocking a foreclosure sale is far greater than that of an ephemeral TRO prohibiting the same conduct for mere days or weeks, the jurisdictional impacts of this distinction are profound.")

[8] Paragraph 37 alleges that defendant's representations were relied upon "to create the belief that Defendants would not foreclose while the mortgage was under review for a modification." Paragraph 38 states that Arguably, given plaintiff's basis for this claim—that defendant's promises that the sale would not go forward, and that it was considering the HAMP application—a hypothetical ruling equitably estopping that sale might as a practical matter have formed the basis of a similar ruling on a potential subsequent sale within a reasonable time thereafter; under such circumstances, perhaps the language could have been stretched to any sale while the HAMP application was pending. Even so, such similar reasoning would be valid only for a strictly limited time, ending <u>at defendant's option</u> whenever it completed review of that application.

of a delay in the foreclosure can be counted toward the jurisdictional amount at issue at the time of the removal.

With regard to defendant's assertion that plaintiff has challenged its right to receive any payment whatsoever, because the complaint challenges PHH's standing, that argument also does not withstand close inspection. Plaintiff acknowledges in the Complaint that it had taken out the loan and mortgage with Coldwell Banker Mortgage, but challenged the right of PHH to foreclose. As noted above, these claims were based on the apparent misunderstanding that these were two separate entities. Regardless of that misapprehension, plaintiff's allegations concerning PHH's lack of standing were clearly limited to certain times prior to the filing of the lawsuit:

> "[u]pon information and belief, PHH <u>did not</u> own any beneficial interest in the mortgage or note <u>at the time the notice was first published</u>" [Complaint, ¶ 9];
>
> "that PHH, <u>at the time [] the purported foreclosure sale was noticed and the loan accelerated</u>, <u>held</u> no beneficial interest in the mortgage or note" [<u>Id.</u>, Count Seven].

As such, no reasonable person could construe plaintiff's complaint as placing PHH's right [as opposed to that of its alter-ego Coldwell Banker Mortgage] to payment of the principal value of the note and mortgage.

The undersigned has recently addressed the calculation of the amount in controversy in a wrongful foreclosure claim. *See* <u>Bourgeois v. Wells Fargo Bank</u>, N.A., 2011 WL 836677 (S.D.Ala.), *R&R adopted by,* 2011 WL 855398 (S.D.Ala). The court therein denied the Motion to Remand on the basis that plaintiff's challenge to defendant's alleged attempt to add $77,000 dollars to the principal balance in the loan modification satisfied the jurisdictional requirement. In addition, the undersigned opined that the plaintiff's claim that sought a declaration that the assignee lacked authority to foreclose on the mortgage would put the full amount of the

8

mortgage in issue. However, the differences in the language of the complaint are dispositive. In Bourgeois, the complaint sought a declaration that "Defendants have no authority in law or equity to conduct <u>any foreclosure sale, including the one scheduled for November 8, 2010</u>." CV10-626-KD-N, doc 1, ex.1 at 11. Comparing that language to the claim in the instant case that "Defendants should, in equity, be stopped from conducting any foreclosure sale <u>in connection with the proceeding that was initiated while the loan was under review for modification</u>" demonstrates the express temporal limitation of the instant claim. This slight variation in language controls the plaintiff's potential remedies and distinguishes the holding in the instant case from the alternative holding in Bourgeois.

## Conclusion

For the reasons set forth above, the undersigned RECOMMENDS that the court find that the defendant has failed to prove that the amount in controversy exceeds the sum of $75,000, as required by 28 U.S.C. §1332 and that the court therefore lacks jurisdiction over this action, and that the court GRANT the Motion to Remand and remand this action to the Circuit Court of Mobile County, Alabama.

The attached sheet contains important information regarding objections to the Report and Recommendation.

DONE this the 3rd day of May, 2011.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

9

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added) A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial
determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE